**FILED**

**May 31, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 11:12 AM**



## TENNESSE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | |
|---|---|
| Dawn Woodard, | )   Docket No.: 2015-01-0402 |
|       Employee, | ) |
| v. | )   State File No.: 95737-2014 |
| Amazon.com, | ) |
|       Employer. | )   Judge Audrey A. Headrick |
| | ) |

## EXPEDITED HEARING ORDER

This matter came before the undersigned workers' compensation judge on May 3, 2017, on the Request for Expedited Hearing filed by Dawn Woodard. The present focus of this case is whether Ms. Woodard is entitled to additional medical and temporary disability benefits for her alleged left shoulder and right foot injuries. The central legal issue is whether Ms. Woodard is likely to establish at a hearing on the merits that Amazon.com must provide additional medical and temporary disability benefits. For the reasons set forth below, the Court holds Ms. Woodard is not entitled to the requested benefits at this time.

### History of Claim

Ms. Woodard, a stocker at Amazon, alleged she injured her left arm on November 26, 2014, while lifting something over her head and injured her right foot on November 30 when she dropped a box on it. She testified she dropped the box "because of her [left] arm." Ms. Woodard declined the medical treatment Amazon offered to her on November 26 but later sought treatment at AmCare, Amazon's on-site medical clinic, on November 30. She also sought treatment with multiple non-authorized physicians over a period of time.

After Ms. Woodard's November 30 visit to AmCare, Amazon provided her with a panel of physicians. She selected Tennessee Valley Bone and Joint where she saw Dr. Christopher Palmer, an orthopedic surgeon. (Ex. 6.) On the patient history form, Ms. Woodard identified November 20 and 30 as her injury dates. She told Dr. Palmer she dropped a box on her foot and indicated her left arm was painful from strenuous and

1

repetitive use. Although Ms. Woodard testified that Dr. Palmer did not take any x-rays of her shoulder, his records reflect that she had x-rays taken of her left shoulder and right foot revealing no acute bone abnormalities. Dr. Palmer diagnosed left shoulder impingement, possible rotator cuff strain, and a right foot contusion. He released her to return to work without restrictions and to follow-up as needed.

When Ms. Woodard returned to Dr. Palmer for follow-up, she mainly complained of left shoulder pain and indicated her foot was improving. Ms. Woodard told Dr. Palmer she did not recall any specific trauma to her shoulder. Dr. Palmer stated he saw "no evidence of any demonstrable related trauma" regarding her shoulder. He also stated, "[s]he may want to see her family physician for any additional medications for her shoulder, but I have suggested over-the-counter medication and anti-inflammatories." (Ex. 2 at 6.) Dr. Palmer again released her to return to work without restrictions.

Ms. Woodard saw Dr. Thomas S. Layman, her primary care physician, two days later on December 17. She presented with complaints of right foot and left shoulder pain. The record indicates Ms. Woodard stated she dropped a box on her right foot and, when putting the box up, it fell back on her. Dr. Layman took her off work and noted Ms. Woodard stated she was not returning to work until she was pain-free.

After seeking treatment with Dr. Layman, Ms. Woodard returned to see Dr. Palmer for the last time on January 23, 2015. She had x-rays taken again of her right foot. Although there were no acute bone abnormalities, Dr. Palmer noted she had moderate degenerative changes of her first metatarsal phalangeal (MTP) joint. Ms. Woodard told Dr. Palmer she was unable to do her job, but he returned her to work without restrictions and advised her to follow-up as needed.

Dr. Layman, however, continued to keep Ms. Woodard off work due to her left shoulder. On an Attending Physician's Statement of Work Capacity and Impairment completed on January 30, he checked "yes" in response to a question regarding whether the condition arose out of Ms. Woodard's employment. *Id.* at 18. By February, Ms. Woodard continued to complain of left shoulder and right foot pain. Dr. Layman noted "[n]o obvious physical deficits [with] reported pain." Ms. Woodard reiterated she was not returning to work until she was pain-free. Dr. Layman told her it was "not likely at this point in life that [she] would ever be 'pain free'" and told her she "[m]ight need to look for work she can do." *Id.* at 23. At Ms. Woodard's last visit with Dr. Layman on March 2, she reported her left shoulder and right foot pain increased after she fell in the snow. Ms. Woodard testified she did not recall the date she fell but she agreed the fall occurred after February 23, 2015.

After seeing Dr. Layman, Ms. Woodard began treating with Dr. Paul McCulley, a podiatrist, for her right foot. Ms. Woodard gave a history of dropping a twenty-pound box on her foot at work and being unable to walk normally. After taking x-rays, Dr.

2

McCulley diagnosed Ms. Woodard with posttraumatic arthritis, hallux rigidus, hallux valgus, and sesamoiditis. He later recommended that Ms. Woodard undergo a McBride bunionectomy, which has not yet occurred.

Dr. McCulley completed a questionnaire regarding Ms. Woodard's right foot. His opinion was that Ms. Woodard's right foot condition was due to "[t]rauma from injury at her workplace." *Id.* at 77. When asked if the condition arose primarily out of the course and scope of her employment, he responded, "yes." *Id.* Dr. McCulley's responses indicate that his prior diagnoses remained unchanged.

During the time she treated with Dr. McCulley, Ms. Woodard also sought treatment at Athens Family Practice with Martha J. Pascarella, ANP. Ms. Pascarella ultimately referred Ms. Woodard to Dr. David Robins for treatment of her right shoulder. Dr. Robins diagnosed Ms. Woodard with left shoulder impingement syndrome and A-C joint arthrosis. Dr. Robins ultimately performed surgery but did not observe a rotator cuff tear.

Prior to Dr. Robins performing shoulder surgery, the parties reached an agreement through mediation that Amazon would provide Ms. Woodard with a second opinion regarding causation on her shoulder and foot conditions and, if applicable, address work restrictions. (Ex. 6.) Ms. Woodard selected Dr. Rickey Hutcheson, an orthopedic surgeon with Tennessee Valley Bone and Joint, from the panel to provide a second opinion. *Id.* The parties agreed for Amazon to provide Dr. Hutcheson with all of Ms. Woodard's unauthorized medical records in order for him to perform a record review.[1] *Id.*

A February 11, 2016 letter from Amazon to Dr. Hutcheson enclosed Ms. Woodard's medical records and a questionnaire. (Ex. 2 at 111.) In the questionnaire, Amazon referred Dr. Hutcheson to Dr. Palmer's medical records in addressing whether Ms. Woodard's present alleged left shoulder and right foot conditions arose primarily out of her employment at Amazon. Dr. Hutcheson concluded that Ms. Woodard's left shoulder and right foot conditions did not arise primarily out of her employment at Amazon. Likewise, in a second questionnaire, Dr. Hutcheson confirmed he found no causal relationship between surgical intervention for her left shoulder and right foot conditions and her November 30, 2014 accident. *Id.* at 117. Further, Dr. Hutcheson noted that Ms. Woodard "sought multiple physicians for same condition." *Id.* at 114.

On April 17, 2017, over a year after its last letter to Dr. Hutcheson, Amazon sent him a third letter and questionnaire enclosing medical records from Dr. McCulley. *Id.* at 118. After reviewing the December 8, 2014 and January 23, 2015 x-rays, Dr. Hutcheson

---

[1] At some point after Ms. Woodard sought treatment on her own with multiple physicians, she discovered that Dr. Palmer is no longer with Tennessee Valley Bone and Joint. Thus, she was unable to provide him with her subsequent medical records for his consideration.

stated that no fracture or bone abnormalities were present on either date. Dr. Hutcheson provided an opinion that the degenerative changes present on January 23 did not arise primarily out of her employment at Amazon. Additionally, Dr. Hutcheson stated that Ms. Woodard's hallux valgus deformity and other diagnoses by Dr. McCulley, as well as his recommendation of a McBride bunionectomy, did not arise primarily from her November 30, 2014 accident.

Ms. Woodard seeks medical benefits and temporary disability benefits for her alleged left shoulder and right foot injuries.[2] She argued Amazon is responsible for payment of bills for unauthorized treatment and temporary disability benefits from December 16, 2014, to the present. Ms. Woodard asserted Dr. Palmer instructed her to see her own physician, which resulted in her seeking unauthorized treatment. She also pointed out that Dr. Hutcheson did not personally evaluate her and argued that Amazon did not provide him with all of her medical records.

Amazon argued Ms. Woodard is not entitled to any of the requested benefits. It argued Ms. Woodard did not rebut the presumption of correctness of the causation afforded Dr. Palmer's and Dr. Hutcheson's causation opinions. Amazon noted that Dr. Hutcheson is the only physician who reviewed all of Ms. Woodard's medical records and x-rays. It asserted it provided all of Ms. Woodard's available medical records to Dr. Hutcheson. Amazon pointed out that Ms. Woodard reported to Dr. Layman on March 2, 2015, that she fell in the snow and complained of increased left shoulder and right foot pain, but she failed to disclose that fall to her other medical providers. Further, Amazon argued that Ms. Woodard did not inform it that she was seeking unauthorized medical treatment until she filed her Request for Expedited Hearing in February 2017.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

The following legal principles apply to this case. Ms. Woodard need not prove every element of her claim by a preponderance of the evidence in order to recover medical and/or temporary disability benefits at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016). This lesser evidentiary standard does not relieve Ms. Woodard of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted if that evidence does not rise to the level of a

---

[2] In the Dispute Certification Notice, Ms. Woodard also raised the disputed issue of permanent disability benefits. However, since this was an expedited hearing, the Court will not address the permanent disability benefits issue until the final compensation hearing.

4

'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015).

*Medical Benefits*

In order to prove an entitlement to additional medical benefits, Ms. Woodard must show, to a reasonable degree of medical certainty, that the November 30, 2014 incident "contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. As the panel physician, Dr. Palmer's opinion regarding causation "shall be presumed correct but this presumption shall be rebuttable by a preponderance of the evidence." *See* Tenn. Code Ann. § 50-6-102(14) (2016). The Court will address the alleged shoulder injury and alleged foot injury in turn.

*Left Shoulder*

Here, the parties do not dispute that Ms. Woodard initially complained of injuring her left shoulder on November 26, 2014, and again complained about it on November 30, 2014, when she dropped a box on her right foot. Instead, the parties dispute whether Amazon is responsible for the medical treatment Ms. Woodard sought on her own with multiple providers. Dr. Palmer's office notes are silent on causation for either alleged injury. For that reason, the Court holds that Dr. Palmer is not entitled to any presumption of correctness.

After determining that Dr. Palmer is not entitled to a presumption of correctness, the Court next considers the other medical records submitted by the parties. However, none of the records submitted by Ms. Woodard contains any medical opinions as to whether the unauthorized treatment is causally-related to the November 30, 2014 incident. In fact, it is unclear from the record if she injured her shoulder on November 26 in a specific incident or if she is claiming a gradually occurring injury. Additionally, Dr. Hutcheson provided the only causation opinion regarding Ms. Woodard's left shoulder. He determined no causal relationship existed between the surgery recommended to correct her shoulder and the November 30 incident. Therefore, Ms. Woodard has not demonstrated she is likely to prevail at a hearing on the merits in establishing that the November 30 incident caused the need for the medical treatment she obtained for her left shoulder.

*Right Foot*

The parties also dispute whether the incident where Ms. Woodard dropped a box on her foot caused the need for the unauthorized treatment of her right foot. As

5

previously noted, Dr. Palmer's office notes do not address causation regarding Ms. Woodard's foot complaints. He simply recommended that she return to see him on an as-needed basis.

Because Dr. Palmer did not address causation, and thus his opinion is not entitled to a presumption of correctness, the Court turns to consideration of the other doctors' notes and opinions. After initially seeking treatment with Dr. Layman, her primary care physician, Ms. Woodard began simultaneously treating with Dr. McCulley. Despite having a fall in the snow shortly after February 23, 2015, which worsened her foot pain, Ms. Woodard did not disclose that information to Dr. McCulley. Additionally, although Ms. Woodard testified that she has a fractured foot, the medical records do not reflect that diagnosis. Instead, the right-foot x-rays taken prior to her fall in the snow indicate she had no bone abnormalities. As previously noted, Dr. McCulley's opinion is that Ms. Woodard's right foot condition arose primarily out of and in the course and scope of her employment and caused the need for foot surgery. However, since Ms. Woodard failed to disclose to Dr. McCulley that she fell in the snow and had increased foot pain, the Court gives no weight to his opinions.

The Court next considers the "second opinion" provided by Dr. Hutcheson, whom Ms. Woodard selected from a panel. Amazon argued that Dr. Hutcheson's opinion is entitled to a presumption of correctness because Ms. Woodard selected him from a panel. However, the Court finds that Dr. Hutcheson is not entitled to a statutory presumption of correctness. As the parties acknowledged, Ms. Woodard selected Dr. Hutcheson from a panel solely for the purpose of a record review to address causation. The Court is unaware of any statutory law or case law indicating that a physician selected from a panel to perform a "second opinion" or record review is entitled to the statutory presumption of correctness.

Although Dr. Hutcheson's opinion on causation is not entitled to a legal presumption of correctness, given the entire context of the case, the Court finds Dr. Hutcheson's opinion deserves greater weight than that of the other physicians. Since Dr. Hutcheson, an orthopedic surgeon, reviewed all of Ms. Woodard's medical records, including x-rays taken of her foot, the Court finds him to be in the best position to provide an informed opinion regarding causation. Although the parties dispute whether Amazon provided Dr. Hutcheson with all of Ms. Woodard's medical records, Ms. Woodard submitted no proof to establish that he did not receive all of her records. After performing the record review, Dr. Hutcheson determined that Ms. Woodard's right foot conditions did not arise primarily out of her employment at Amazon. Likewise, he determined that any degenerative changes or recommended surgical interventions did not arise primarily out of the November 30 work incident. Based on a review of all the medical testimony, the Court finds that Ms. Woodard offered insufficient evidence to establish that the November 30 incident caused the need for additional treatment for her foot.

For these reasons, the Court holds Ms. Woodard is unlikely to prevail at a hearing on the merits in proving entitlement to additional medical and temporary disability benefits. Although the parties raised other issues, including Ms. Woodard's alleged failure to notify Amazon that she was seeking unauthorized treatment as well as the issue of temporary disability benefits, the Court finds it is not necessary to address those issues in light of the Court's holding regarding causation. Therefore, the Court denies Ms. Woodard's request for medical and temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Woodard's requested relief is denied at this time.

2. This matter is set for a Status Hearing on August 14, 2017, at 2:00 p.m., Eastern Time. You must call 423-634-0164 or toll free at 855-383-0001 to participate. Failure to call in may result in a determination of the issues without your further participation.

**ENTERED this the 31st day of May, 2017.**


**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:

1. Affidavit of Dawn Woodard
2. Cumulative Medical records numbered Medical Exhibit 1-124
3. Causation opinion of Martha J. Pascarella, ANP (Identification Only)
4. Affidavit of Kim Wilson
5. Workers' Compensation: AA Responsibilities Regarding Injuries
6. Two Panels and Notice of Mediated Agreement
7. Associate First Report of Injury


Technical record:[3]

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response in Opposition to Employee's Request for Evidentiary Hearing
5. Order for Expedited Hearing
6. Notice of Expedited Hearing
7. Employer's Prehearing Brief
8. Amended Notice of Expedited Hearing
9. Notice of Filing Medical Records Exhibit
10. Notice of Filing Affidavit
11. Employer's Supplemental Prehearing Brief

---

[3] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 31st day of May, 2017.

| Name | Certified Mail | Via Email | Email Address |
|---|---|---|---|
| **Matthew Coleman Employee's Attorney** | | X | mcoleman@loganthompsonlaw.com |
| **W. Troy Hart Todd Heird Employer's Attorneys** | | X<br>X | wth@mijs.com<br>tiheird@mijs.com |

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

9